UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KEVIN MICHAEL POWERS and
TAMMY LEE POWERS,**

    Plaintiffs,

v.                                      Case No: 8:20-cv-2026-MSS-JSS

**SIG SAUER, INC., L&O SIG SAUER
VERWALTUNGS-GMBH, and
DANA SAFETY SUPPLY, INC.,**

    **Defendants.**

## ORDER

**THIS CAUSE** comes before the Court for consideration of Plaintiffs' Motion to Remand, (Dkt. 15), Defendant Sig Sauer, Inc.'s Response in opposition thereto, (Dkt. 20), and Plaintiffs' Reply. (Dkt. 26) For the reasons that follow, the Court **GRANTS** Plaintiffs' Motion to Remand to State Court.

### I. BACKGROUND

On November 25, 2016, Plaintiff Holmes Beach Police Sergeant Kevin Powers returned home from work and began to safely store his department-issued firearm ("Subject Pistol"). (Dkt. 3-11 at ¶¶ 52-54) The Subject Pistol was .40 caliber handgun designed and manufactured by Sig Saur, Inc. ("Sig-USA"). (Id. at ¶ 58) When Plaintiff Sergeant Powers attempted to eject the bullet from the Subject Pistol's chamber, the

Subject Pistol discharged causing the bullet to exit the barrel and strike Sergeant Powers' leg. (Id. at ¶¶ 64, 68) The trigger was never pulled. (Id.)

On May 15, 2020, Plaintiffs initiated a civil action in the Twelfth Judicial Circuit in and for Manatee County, Florida alleging significant damages associated with the gunshot wound. (Dkt. 1-1) The initial five-count Complaint asserted causes of action against Dana Safety Supply, Inc. ("Dana Safety Supply") and Sig-USA. (Id.) Plaintiffs later amended their Complaint to join L&O Sig Sauer Verwaltungs-GMBH ("Sig-GMBH") as a defendant and to add five (5) additional counts against Dana Safety Supply, Sig-USA, and Sig-GMBH (collectively, the "Defendants"). (Dkt. 1-2, 1-3) Specifically, Plaintiffs allege claims of negligence, strict products liability, joint venture, partnership liability against Defendants. Sig-USA was served with the amended Complaint on August 26, 2020. Two days later, Sig-USA removed this action alleging diversity under 29 U.S.C. § 1332 as a basis for federal jurisdiction. (Dkt. 1)

In the Notice of Removal, Sig-USA seems to recognize that federal diversity jurisdiction is not present on the face of the Amended Complaint because one of the named defendants—Dana Safety Supply—is a Florida citizen, as are Plaintiffs. (Id. at ¶¶ 10-11) Sig-USA asserts, however, that Dana Safety Supply has been fraudulently joined, and that there is complete diversity of citizenship between the properly joined parties when this party is disregarded. (Id. at ¶¶ 14, 28-30) The assertion of fraudulent joinder is premised on Dana Safety Supply having "no connection to the controversy as a defendant" because Dana Safety Supply was allegedly not part of the

2

manufacturing, sale, or distribution of the Subject Pistol. (Id. at ¶¶ 15-16) Accordingly, Sig-USA argues that Plaintiffs have no viable claim against Dana Safety Supply and complete diversity of citizenship exists as to the properly joined parties.

On October 7, 2020, Plaintiffs moved to remand the case to state court, alleging Dana Safety Supply is a proper party and, therefore, the court lacks subject matter jurisdiction. (Dkt. 15) Specifically, Plaintiffs contend Sig-USA failed to meet its burden to prove Dana Safety Supply has been fraudulently joined. (Id. at ¶¶ 5-6)

## II.     LEGAL STANDARD

Motions to remand are governed by 28 U.S.C. § 1447, which authorizes a plaintiff to seek remand of a case based on a jurisdictional or procedural defect and permits a court to order payment of attorney's fees and costs incurred as a result of the removal. 28 U.S.C. § 1447. The Court also has a continuing obligation as a court of limited jurisdiction to assess its jurisdiction at the earliest possible stage of the proceedings. See Kirkland v. Midland Mortgage Co., 243 F. 3d 1277, 1279-80 (11th Cir. 2001) (citing University of South Alabama v. American Tobacco Co., 168 F. 3d 405, 410 (11th Cir. 1999)); accord Bochese v. Town of Ponce Inlet, 405 F. 3d 964, 974-75 (11th Cir. 2005).

Federal courts are courts of limited subject matter jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted). "In a given case, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question

jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." Baltin v. Alaron Trading, Corp., 128 F.3d 1466, 1469 (11th Cir. 1997). A removing defendant bears the burden of proving the existence of federal jurisdiction. See Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001). When a case is removed based on diversity jurisdiction, the court must remand the case to state court if there is not complete diversity between the parties. Stillwell v. Allstate Ins. Co., 663 F.3d 1329, 1332 (11th Cir. 2011). Complete diversity exists only if "*each* defendant is a citizen of a different state from *each* plaintiff." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978) (emphasis in original). A corporate entity is a citizen of the state in which it is incorporated and the state in which its principal place of business is located. 28 U.S.C. § 1332(c).

  The fundamental jurisdictional issue in this case is whether Dana Safety Supply is a proper party. Sig Sauer asserts that Dana Safety Supply was fraudulently joined, while Plaintiffs assert it was properly joined. Fraudulent joinder occurs when a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction. Henderson v. Wash. Nat'l Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006). A defendant seeking to prove that a co-defendant was fraudulently joined must demonstrate, by clear and convincing evidence, either that: "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir.1997).

With respect to the first type of fraudulent joinder, "if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Tillman v. R.J. Reynolds Tobacco, 340 F.3d 1277, 1279 (11th Cir. 2003). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir.1998) (emphasis added).

In determining "whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." Crowe, 113 F.3d at 1538. A federal court should make "these determinations based on the plaintiff's pleadings at the time of removal; but the court may [also] consider affidavits and deposition transcripts submitted by the parties." Id.

It is important to note that "[w]hile the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b) . . . the jurisdictional inquiry must not subsume substantive determination." Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989); see also Montgomery & Larmoyeux, 992 F.Supp. 1372, 1375 (S.D. Fla. 1998) ("Therefore, a plaintiff need not show that he can survive a motion for summary judgment; the standard is much lighter"). Indeed, federal courts must be certain of their jurisdiction before "embarking upon a safari in search of a judgment

on the merits." Crowe, 113 F.3d at 1538. As such, "[w]hen considering a motion to remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Id. In other words, a "district court's authority to look into the ultimate merits of the plaintiff's claims must be limited to checking for obviously *fraudulent* or *frivolous* claims." Id. at 1542 (emphasis added).

### III. DISCUSSION

In its Notice of Removal, Sig-USA asserts only that Plaintiffs have no possible claims against Dana Safety Supply because Dana Safety Supply was not part of the "chain of distribution" of the Subject Pistol. Specifically, Sig-USA submits that Dana Safety Supply never sold or distributed the Subject Pistol to Holmes Beach Police Department. Rather, Defendant contends Sig-USA sold the Subject Pistol directly to Holmes Beach Police Department. Therefore, Dana Safety Supply could not be liable for negligence or strict products liability.

In order to hold a distributor liable on the theory of strict liability in tort, a plaintiff must establish distributor's relationship to the product in question, the defect and unreasonably dangerous condition of the product, and the existence of the proximate causal connection between such condition and the user's injuries or damages. West v. Caterpillar Tractor Co., 336 So.2d 80, 87 (Fla. 1976); Visnoski v. J.C. Penney Co., 477 So. 2d 29, 29-30 (Fla. 2d DCA 1985) (finding the doctrine of strict liability applies to distributors). If it is arguable that Dana Safety Supply *was*

6

within the Subject Pistol's chain of distribution, Plaintiffs have not made fraudulent or frivolous claims against Dana Safety Supply.

In Plaintiffs' Motion to Remand, Plaintiffs assert that Sig-USA's evidence fails to prove Dana Safety Supply was not within the chain of distribution of the Subject Pistol. (Dkt. 15 at 2-3) Plaintiffs argue that Sig-USA provided inconsistent evidence and further discovery is required in state court to determine Dana Safety Supply's role. (Id. at 7-8) Therefore, Plaintiffs contend that Sig-USA's evidence fails to prove, by clear and convincing evidence, that Dana Safety Supply was not part of the sale or distribution of the Subject Pistol. (Id.)

In opposition to remand, Sig-USA submits affidavits from Holmes Beach Police Department Chief of Police, William Tokajer, and Sig-USA's Senior Director of Law Enforcement Sales, Matthew Farkas. Chief Tokajer states the police department engaged in a trade transaction with Sig-USA wherein the police department would exchange various firearms for Sig-USA pistols, including the Subject Pistol, directly from Sig-USA. (Dkt. 20-3) Chief Tokajer further asserts that the transaction occurred at no cost to the police department. (Id.) Sig-USA's Mr. Farkas attempted to confirm the nature of the transaction along with the parties involved in the transaction via review of Sig-USA's database. (Dkt. 20-1) Mr. Farkas explains that Sig-USA maintains an extensive database that tracks "the acquisition and disposition of all firearms it sells." (Id. at ¶ 4) Upon review of Sig-USA's acquisition and disposition records, Mr. Farkas located an invoice dated December 14, 2014 purporting to memorialize the trade transaction between Sig-USA and Holmes Beach Police Department (the

"Invoice"). (Id. at ¶ 6) Mr. Farkas further asserts the purported transaction reflected in the Invoice occurred "without any involvement by Dana Safety Supply." (Id. at ¶ 9). Sig-USA submits that the Invoice and the affidavits of Mr. Farkas and Chief Tokajer, clearly and convincingly prove Dana Safety Supply was not part of the chain of distribution of the Subject Pistol.

Plaintiffs, however, contend that due to the lack of corroborating evidence the Invoice does not conclusively prove a transaction occurred. (Dkt. 15 at 6-7) Once Plaintiffs received the Invoice from Sig-USA, Plaintiffs requested all records of firearm sales to the City of Holmes Beach to confirm the transaction. However, Plaintiffs contend the transaction described in the Invoice was reflected "nowhere in the City of Holmes Beach Budget." (Id. at 6) Plaintiffs subsequently sought the Invoice's metadata from Sig-USA to confirm the date of its creation. (Dkt. 15 at 7) Sig-USA represents that it could not provide the metadata from 2014. (Dkt. 20 at n.3) Sig-USA asserts the only metadata available is from the May 2020 – nearly six (6) years after the purported transaction occurred. Plaintiffs argue that without the metadata there is no way to confirm the Invoice was created at the time of the purported transaction. As such, Plaintiffs contend that the absence of any public record to corroborate the transaction's occurrence and the lack of metadata to confirm the date of the Invoice's creation raise significant doubts as to the whether the purported transaction actually took place. The Court agrees.

The Court also finds the Invoice to be inconsistent with Mr. Farkas' affidavit. Mr. Farkas explains that the database "includes records of the date of each *acquisition* and disposition of a firearm, the firearm model, and the identity of the party the firearm *is acquired from* or disposed to." (Id.) (emphasis added) Both Mr. Farkas and Chief Tokajer describe the transaction at issue as a trade by which Sig-USA would *acquire* firearms from the police department in exchange for new firearms from Sig-USA (Dkt. 20-1 at ¶ 7; Dkt. 20-3 at ¶ 2) Mr. Farkas represents that the Invoice reflects that trade transaction. (Dkt. 20-1 at ¶ 6) However, the Court finds the Invoice reflects no such transaction. The Invoice fails to describe the date Sig-USA acquired the firearms from the police department or the firearm models it received. (Dkt. 20-1 at 4-5) The Invoice further makes no mention that the transaction was a trade of firearms between Sig-USA and the police department. (Id.) In fact, the Invoice reflects a cost of $274.87 to the police department for the firearms despite Chief Tokajer's assertion the transaction was at no cost to the police department. (Id.) The Court finds the Invoice to be insufficient to prove that Sig-USA sold the Subject Pistol directly to Holmes Beach Police Department.

The evidence presented by the parties raises significant questions of fact related to existence of Sig-USA's purported transaction involving the Subject Pistol. Resolving, as it must, all questions of fact in Plaintiffs' favor for purposes of this motion, the Court finds that Sig-USA failed to meet its burden to prove its direct sale of the Subject Pistol to Holmes Beach Police Department. According to Plaintiff's evidence, Dana Safety Supply is the only entity that sold firearms to Holmes Beach

9

Police Department during the time period at issue. (Dkt. 15 at 6) The City of Holmes Beach Budget reflects that Dana Safety Supply engaged in a gun exchange with the City of Holmes Beach and its police department firearms in 2015. (Dkt. 15-3) Looking further, to the extent the police department received *any* firearms between 2014 and 2016,[1] the City of Holmes Beach Budget would tend to show that they were part of the gun exchange between the police department and Dana Safety Supply because, on this record, no other firearm transaction is reflected in the Budget. (Dkt. 15-2) Absent some conclusive evidence from Sig-USA to the contrary, the Court finds that Sig-USA failed to establish that there is no possibility that Plaintiffs can maintain their claims against Dana Safety Supply. Thus, the Court finds that the factual disputes prevent the Court from concluding that Dana Safety Supply was fraudulently joined in this action.

As such, the Court must consider Dana Safety Supply in its analysis of diversity jurisdiction. It is undisputed that Dana Safety Supply is an entity incorporated in Florida with its principal place of business in Florida, and it is undisputed that Plaintiffs are residents of Florida. As Plaintiffs and Dana Safety Supply are residents of the same state, complete diversity is defeated, and Plaintiffs' Motion to Remand is due to be granted.

---

1 It seems that the Parties agree the police department received the Subject Pistol no earlier than 2014. Sig-USA asserts that the Subject Pistol was part of a purported transaction in 2014. (Dkt. 20 at 4) Plaintiffs submit that the Subject Pistol was part of a gun exchange in 2015. (Dkt. 15 at 6)

10

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Remand, (Dkt. 15), is **GRANTED**.

2. The Clerk is **DIRECTED** to **REMAND** this case to the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida.

3. Thereafter, the Clerk is **DIRECTED** to **TERMINATE** any pending motions and **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida, this 26th day of March, 2021.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person